AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD May 2025)

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) | Case No.  MJ25-343 |
| The Target Locations and Target Vehicles further described in Attachments (A-1-A-6) | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment B, incorporated by reference.

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 841 and 846 | Possession with Intent to Distribute Controlled Substances and Conspiracy |

The application is based on these facts:

See Affidavit of Kenneth D. Bowers, Task Force Officer, DEA.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kenneth D. Bowers, DEA Task Force Officer
*Printed name and title*

This warrant is presented: ☑ by reliable electronic means ☐ telephonically recorded ☐ in person.

Date: _____ June 6, 2025 _____

_____
*Judge's signature*

City and state: _____ Seattle, Washington _____

S. Kate Vaughan, U.S. Magistrate Judge
*Printed name and title*

USAO: 2024R00931

**AFFIDAVIT**

STATE OF WASHINGTON     )
                        )     ss
COUNTY OF KING          )

    I, Kenneth D. Bowers, a Task Force Officer with the Drug Enforcement Administration (DEA) in Tacoma, Washington, having been first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

    1.    I am a commissioned law enforcement officer of the Tacoma Police Department, assigned to the Special Investigations Division. I am also co-assigned to the Tahoma Narcotics Enforcement Team (TNET/DEA) as a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA). I have been employed by the Tacoma Police Department since February 15, 1995, and during that time I have been involved in over 1,000 state felony narcotics-related arrests. I have also assisted with search warrants; locating evidence, logging evidence, and dismantling of grow operations. I am currently assigned to the Special Investigations Division of the Tacoma Police Department/Tahoma Narcotics Enforcement Team (TNET/DEA), and I am assigned to investigate the sale and distribution of illegal narcotics. I have completed the 80-hour Basic Drug Enforcement course and the 16-hour Indoor Marijuana Cultivation Investigation course both sponsored by the Drug Enforcement Administration. I have completed the 40-hour Practical Kinesic Interview, 30-hour Gang Investigations, and 30-hour Street Crimes courses. I have also received extensive in-service training in the identification of controlled substances such as black tar heroin, heroin, marijuana, and methamphetamine.

    2.    I have also received extensive training in the methods for packaging sale, distribution, trafficking, and the use and applications of these substances. During the course of my law enforcement career, I have been involved in investigations of numerous criminal offenses, including the offenses involved in the current investigation. I have

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 1

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  participated in criminal investigations of illicit drug trafficking organizations, ranging
2  from street-level dealers to major dealers, to include drug trafficking organizations linked
3  to Mexico-based organizations. These investigations have also included the unlawful
4  importation, possession with intent to distribute, and distribution of controlled
5  substances; the related laundering of monetary instruments; the conducting of monetary
6  transactions involving the proceeds of specified unlawful activities; and conspiracies
7  associated with criminal narcotics offenses. These investigations have included use of the
8  following investigative techniques: confidential informants; undercover agents; analysis
9  of pen register and toll records; physical and electronic surveillance; wiretaps; and the
10  execution of search warrants. I have also interviewed defendants at the time of their
11  arrests and have debriefed, spoken with, or interviewed numerous drug dealers or
12  confidential sources (informants) at proffer interviews who were experienced in speaking
13  in coded conversations over the telephone. I have gained knowledge regarding the
14  various methods, techniques, codes, and/or jargon used by drug traffickers in the course
15  of their criminal activities, including their use of cellular telephones and other electronic
16  devices to facilitate communications while avoiding law enforcement scrutiny.

17        3.      I have authored, planned, and participated in the execution of search
18  warrants authorizing the search of locations associated with drug traffickers and their co-
19  conspirators, such as residences, businesses, storage facilities, and vehicles. Additionally,
20  I have authored and supervised the execution of multiple of tracking warrants, including
21  multiple state and federal tracking warrant affidavits for vehicles and cellular telephones.
22  I have testified in court proceedings and written reports in the course of investigations.
23  These investigations have resulted in numerous state and federal prosecutions of
24  individuals who have possessed, imported, or distributed controlled substances, including
25  methamphetamine, heroin, cocaine, and fentanyl, as well as the seizure of those illegal
26  drugs and the proceeds from their sale. The facts set forth in this Affidavit are based on
27  my own personal knowledge; knowledge obtained from other individuals during my

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 2

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   participation in this investigation, including other law enforcement personnel; review of

2   documents and records related to this investigation; communications with others who

3   have personal knowledge of the events and circumstances described herein; and

4   information gained through my training and experience. Because this Affidavit is

5   submitted for the limited purpose of establishing probable cause in support of the

6   Application for a search warrant and pen register/trap and trace device, it does not set

7   forth each and every fact that I or others have learned during the course of this

8   investigation. The facts set forth in this affidavit are based on my own personal

9   knowledge; knowledge obtained from other individuals during my participation in this

10   investigation, including other law enforcement personnel; review of documents and

11   records related to this investigation; communications with others who have personal

12   knowledge of the events and circumstances described herein; and information gained

13   through my training and experience. Because this affidavit is submitted for the limited

14   purpose of establishing probable cause in support of the Application for a search warrant

15   and pen register/trap and trace device, it does not set forth each and every fact that I or

16   others have learned during the course of this investigation.

17                                  **Informant Reliability**

18         4.      The reliability of the confidential and reliable informant is based on the fact

19   that he/she has participated in at least two (2) controlled buys, wherein the confidential

20   and reliable informant purchased controlled substances for detectives with the Auburn

21   Police Department, at locations where he/she stated controlled substances could be

22   purchased. On each occasion the confidential and reliable informant was searched for

23   controlled substances with none being located.  On each occasion, the confidential and

24   reliable informant was supplied with funds from the Auburn Police Department narcotics

25   investigative fund, to make purchases of controlled substances. The confidential and

26   reliable informant was then observed arriving at a location where they made contact with

27   a subject.  After a few minutes, the confidential and reliable informant was observed

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 3

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

breaking contact with the subject and was followed to a prearranged location.  At this time, the confidential and reliable informant produced the controlled substances purchased during the reliability buy.  The confidential and reliable informant was again searched for controlled substances, with no additional controlled substances found other than those controlled substances, which were given to the affiant after each purchase.

5.    The reliability of the confidential and reliable informant is further supported by the fact that he/she has been involved in the local drug scene for several years and is familiar with the controlled substance heroin as well as methamphetamine, cocaine and prescription drugs. The confidential and reliable informant has also displayed a working knowledge to your affiant of the street prices of the controlled substance heroin, as well as normal packaging methods used for the illicit street sales. Additionally, your affiant believes that the identity of the informant should remain confidential. Your affiant further believes that the disclosure of his/her identity would expose him/her to retaliation by members of the criminal narcotics community. Your affiant also believes that the revelation of the informant's identity would render him/her inoperative for any future investigation wherein he/she may be able to render assistance to your affiant.

## PURPOSE OF AFFIDAVIT

6.    I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant for the following premises (collectively, the Target Locations):

a)    **Target Location 1 (TL1)**: The residence located at 12009 SE 292nd Way, Auburn WA. 98092, as more fully described in Attachment A1, which is incorporated herein by reference;

b)    **Target Location 2 (TL2)**: The residence located at 27025 48th Place South #L-302, Kent, WA. 98032, as more fully described in Attachment A2, which is incorporated herein by reference;

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 4

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

c)  **Target Location 3** (**TL3**): The residence located at 802 45th Street Southeast #13-103, Auburn WA. 98002, as more fully described in Attachment A3, which is incorporated herein by reference;

d)  **Target Location 4 (TL4)**: A storage unit located at 21218 84th Avenue South, Storage Unit #171, Kent WA. 98032, as more fully described in Attachment A4, which is incorporated herein by reference;

e)  **Target Vehicle 1 (TV1)**: The vehicle bearing Washington license plates, CCB2249, maroon Chevrolet Cruz, V.I.N. #1G1PC5SB0E7253537, registered to Angelo Dewayne Shelton at 27025 48th Place South #L-302, Kent WA. 98032 at 21218 84th Avenue South #171, Kent WA. 98032, as more fully described in Attachment A4, which is incorporated herein by reference;

f)  **Target Vehicle 2 (TV2)**: The vehicle bearing Utah license plates T165WN, dark blue Kia Sportage, V.I.N.#KNDPU3DF4R730279 registered to PV Holding Corp, 565 N. 3800 W, Salt Lake City, UT. 84116, as more fully described in Attachment A4, which is incorporated herein by reference.

7.  As set forth below, I submit that there is probable cause to believe that a search of the aforementioned locations will result in evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841 and 846 (distribution of and possession with intent to distribute controlled substances, and conspiracy to commit these offenses). I seek authorization to search and seize items specified in Attachments B, which are incorporated herein by reference.

8.  For the Target Locations, I am requesting authority to search all parts of the properties including all storage areas associated with the residence such as on-site storage lockers, garages, detached storage sheds, parking stalls, safes located on the property (whether locked or not), vehicles, and the person of any individuals present, where the items described in Attachment B (lists of items to be seized) could reasonably be found.

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 5

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    9.    The facts set forth in this affidavit are based on my own personal

2    knowledge; knowledge obtained from other individuals during my participation in this

3    investigation, including other law enforcement officers; review of documents and records

4    related to this investigation; communications with others who have personal knowledge

5    of the events and circumstances described herein; and information gained through my

6    training and experience. Because this Affidavit is submitted for the limited purpose of

7    establishing probable cause in support of the application for a search warrant, it does not

8    set forth each and every fact that I or others have learned during this investigation. When

9    the statements of others are set forth in this affidavit, they are set forth in substance and in

10   part. All times listed below are approximate.

11   10.   When this affidavit refers to vehicle ownership, either I or other agents[1]

12   involved in the investigation reviewed the relevant state vehicle records from the

13   Washington State Department of Licensing (DOL), or the equivalent agency in other

14   states. Similarly, when this affidavit refers to identification documents, either I or other

15   agents involved in the investigation reviewed the relevant driver's license or similar

16   records maintained by DOL, or the equivalent agencies in other states. When this

17   affidavit refers to the criminal history of a subject, either I or other agents involved in the

18   investigation reviewed the available criminal history from state or federal agencies. When

19   this affidavit refers to telephone subscription records, either I or other agents involved in

20   the investigation reviewed the subscriber records obtained from the telephone company

21   by administrative subpoena or court order, or I obtained the information from other law

22   enforcement officers familiar with this investigation. When this affidavit refers to

23   telephone toll records, either I or other agents involved in the investigation received the

24   information from the telephone company pursuant to an administrative subpoena or court

25

26   [1] When I use the term "agents" or "investigators" throughout the affidavit, I am referring to law enforcement
      personnel, including, but not limited to DEA and Homeland Security Investigations (HSI) agents and task force
27   officers (TFOs), as well as personnel associated with other state and federal law enforcement agencies.

AFFIDAVIT OF TFO KENNETH D. BOWERS                    UNITED STATES ATTORNEY
USAO# 2024R00931 - 6                                  1201 PACIFIC AVENUE, SUITE 700
                                                      TACOMA, WASHINGTON 98402
                                                      (253) 428-3800

authorized pen registers. When this affidavit refers to beliefs or conclusions of investigators, these beliefs and conclusions are based on the collective training and experience of the agents involved in this investigation.

## **PROBABLE CAUSE**

**A.     Summary of DEA Investigation of the Maurice T. SHELTON "MoneyReece" DTO.**

11.     During the month of June 2024, TFO Bowers was in contact with Auburn Police Department Special Investigations Unit (SIU) Detective A. Lindgren. Det. Lindgren informed TFO Bowers that he was in contact with an Auburn PD Confidential and Reliable Source (Hereafter referred to only as CS). That CS had provided information about a subject the CS knew to be selling large amounts of blue counterfeit M-30 fentanyl pills and powdered fentanyl. The CS only identified this subject as "MoneyReece." The CS has known MoneyReece for several years.

12.     In late June 2024, TFO Bowers and Det. Lindgren met with a CS. The CS provided information as to the CS's relationship with "MoneyReece" and what kind of information they could provide about him. The CS stated that he/she met **M. SHELTON** after learning he was a large-scale black tar heroin dealer in the South King County, North Pierce County area. The CS stated that in the beginning **M. SHELTON** sold black tar heroin but switched and primarily sold counterfeit M-30 fentanyl pills and powdered fentanyl for the last few years. When asked why **M. SHELTON** was so popular in the drug circles in that area, the CS stated, "Because he's always on." The CS clarified that's statement by saying that **M. SHELTON** was rarely unavailable to sell fentanyl. As recently as May 2025, a source of information indicated that **M. SHELTON** was a large-scale cocaine dealer in the King County area.

13.     The CS provided the phone number 253-315-9686 (TT1) as the phone number for **M. SHELTON**. Later in the investigation, **M. SHELTON** started to utilize

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 7

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  253-246-3017 (TT3). The CS would call TT1 and immediately receive a call back from

2  TT3, noting that it was **M. SHELTON** calling back from a second phone line.

3      14.    The CS stated that he/she has observed **M. SHELTON** with large

4  quantities of fentanyl packaged for sale at different times and had conversations with him

5  where he reference being able to sell quantities as large as a kilogram. The CS added that

6  M. SHELTON rarely was unable to provide any requested amounts of fentanyl and has

7  been associated with M. SHELTON for at least the past two years. The CS added that **M.**

8  **SHELTON** worked with his brother, who the CS only knew by his moniker "Major."

9  The CS stated that on occasion the CS would call TT1 and speak to **M. SHELTON** to

10  arrange a fentanyl transaction and "Major" would be the subject who arrived and met the

11  CS.

12      15.    The CS was provided with photos of both **M. SHELTON**, **A. SHELTON**

13  and **J. LEE.** The CS positively identified all three as being involved. The CS was

14  familiar with **J. LEE** as **M. SHELTON**'s girlfriend but did not know her name. CS

15  stated that the main subject in this organization was **M. SHELTON** and **A. SHELTON**

16  appeared to work with him as a close second. The CS stated that if **M. SHELTON** was

17  not available to meet then **A. SHELTON** would show up and conduct the drug

18  transaction. The CS stated that **J. LEE** had only delivered drugs to him/her in the past but

19  on a very limited basis in the past.

20      16.    The CS stated that **M. SHELTON** also seemed to travel and sell drugs with

21  other associates in his car. The CS pointed out that on a number of occasions when the

22  CS got into **M. SHELTON's** car there were sometimes up to two other black males with

23  him. When this occurred, the CS would provide money to **M. SHELTON** and one of the

24  other males would give the CS fentanyl. TFO Bowers was aware of this information as he

25  had previously identified two males who frequently rode with **M. SHELTON** while

26  TNET conducted surveillance on him. From April to June 2024, TFO Bowers identified

27  Trevon D SHELTON, a black male with a date of birth July 2, 1998. The other subject

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 8

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  was identified as Yarrnick R. Randle, a black male with a date of birth July 5, 1984.

2  During the listed surveillance period agents observed subjects approaching the vehicle all

3  three were riding in and get inside. After a few moments the subject would depart. This

4  behavior appeared to be drug related and corroborated what the CS had indicated in his

5  statement. One or two of the people who contacted them were positively identified and

6  they had ties to the drug culture and were known to frequent those circles.

7       17.    TFO Bowers knew this subject and knew his true name to be Maurice

8  Tydrel Shelton (hereafter referred to as **M. SHELTON**). He is described as a black male

9  with a date of birth January 15, 1985. TFO Bowers also had several phone numbers for

10  **M. SHELTON**, 253-315-9686 (TT1), 206-327-7844 and later 253-586-5543. **M.**

11  **SHELTON** had provided the TT1 phone in police reports dating back to 2019 and 2020.

12  Since that time, that phone has been registered to **M. SHELTON** and Essie Shelton, one

13  of his close relatives. The 206-327-7844 phone number was later discovered to be used

14  by **M. SHELTON**'s older brother Angelo Dewayne SHELTON, a black male with a date

15  of birth September 29, 1974 (hereafter referred to as **A. SHELTON**). **A. SHELTON** was

16  later known to possess and use the phone number 206-549-6958, which is registered to

17  his girlfriend, however he is listed as a contact person with the phone company.

18       18.    TFO Bowers knew **M. SHELTON** to be a felon stemming for a

19  Washington State Assault Second Degree, Promoting Prostitution, Unlawful Possession

20  of a Controlled Substance conviction and Illinois conviction for Armed Robbery with a

21  Firearm and Possession of a Controlled Substance.

22       19.    **A. SHELTON** and **M. SHELTON** were listed a Kent Police Department

23  report in 2022, where a pistol was located in a motel room associated with them both.

24  TFO Bowers has also interviewed subjects previously that were providing information on

25  **M. SHELTON** and had observed him in possession of firearms while selling narcotics

26  on at least two occasions in 2021. TFO Bowers has also reviewed information obtained

27  from a January 2025 Facebook search warrant that refenced **M. SHELTON** attempting

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 9

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

to illegally purchase a firearm in 2023. In that conversation, **M. SHELTON** was in contact with a known subject, Chayne Marie Solomon. In that conversation **M. SHELTON** contacted Solomon and asked if she had any "Burners" for sale. "Burner" is a street term for a firearm. Solomon subsequently sent **M. SHELTON** a photo a Colt Delta Elite 10mm semiautomatic pistol with a brief description. Both subjects haggled over a price and **M. SHELTON's** final comment was the pistol cost too much. TFO Bowers has had a conversation where the current CS has indicated that **M. SHELTON** has been robbed on at least two occasions in the past three years where drugs and money were taken. TFO Bowers believed, based on **M. SHELTON's** history, his potential for violence, previous association with firearms, his attempt to illegally purchase a pistol in 2023 and being robbed that he is likely to be in possession firearms at his residence or in his vehicle.

20.    TFO Bowers was aware, based on previous interviews with different people that **M. SHELTON** was leader of a drug trafficking organization that operated in the south King County area of Washington State. During these interviews TFO Bowers and other members of the DEA, Tacoma Resident Office (TNET), had identified at least two other main subjects connected to **M. SHELTON** and were known to help him distribute fentanyl. These two were positively identified as **Angelo D. SHELTON** and **M. SHELTON's** girlfriend **Jannie Y. Lee** (hereafter referred to as **J. LEE**).

21.    **J. LEE** is an Asian female with a date of birth July 3, 1982. She is a felon with 14 previous convictions revolving around Identity Theft and Fraud. **J. LEE** was previously identified as a subject that would meet drug customers for **M. SHELTON** after he had brokered the drug deals over the phone.

22.    **A. SHELTON** is a black male with a date of birth September 9, 1974. His Washington State Driver's License information showed a residence at 27025 48th Place South, L-302, Kent Washington. **A. SHELTON** had a previous Unlawful Possession of a Controlled Substance felony conviction, which was vacated in 2021.

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 10

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

23.     TFO Bowers conducted surveillance on all of the subjects at different times throughout 2022 and 2023. During those surveillance operations TFO Bowers witnessed both individuals meeting people at various locations in Kent and Auburn. Those meetings were brief in duration, only lasting a few minutes. These meetings typically took place in public parking lots and involved people either walking up to their cars and getting in the front seat or meeting at the driver's window. The nature of these contacts is consistent with street level drug sales. TFO Bowers was able to positively identify one subject that met with **J. LEE** in the Spring of 2023. He was identified as John W. Fjeldal. TFO Bowers knew him to be a low-level drug dealer, who operated in the Fife area. Fjeldal had also been mentioned by different witnesses in previous interviews as being a daily customer of **M. SHELTON's**.

24.     TFO Bowers was aware that **M. SHELTON** drove rental cars while selling drugs. In the past 10 months, TFO Bowers has noted that **M. SHELTON** has utilized rental cars on at least 7 different times since June 2024. TFO Bowers was also aware from previous investigations and training that subjects engaged in illegal activity will use rental cars as they provided anonymity. Law enforcement has to go to greater steps to identify the drivers, rather than typical means used by uniformed patrol officers.

**B.      Identification of M. SHELTON's residence at 12009 SE 292nd Way, Auburn, Washington (Target Location 1 or TL1).**

25.     Prior to meeting the CS in June 2024, TFO Bowers was aware that **M. SHELTON** was residing at 12203 SE 292 Street, Auburn, WA. TFO Bowers had observed him coming and going from this residence for several weeks. TFO Bowers had also observed **J. LEE** coming and going at will. The public utilities at the residence was registered in **J. LEE's** name.

26.     In November 2024, **M. SHELTON** and **J. LEE** appeared to have been evicted from that residence and moved to 23627 102 Place SE, Kent, WA.

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 11

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

27.     In January 2025, it appeared that **M. SHELTON** and **J. LEE** moved a second time and returned to the same "Bridges" neighborhood located at 12009 SE 292nd Way, Auburn, WA. From March 2025 to present, court authorized phone pings for **M. SHELTON's** phones TT1 and TT3 have placed those phones close to this address. TFO Bowers has also observed a rented KIA Sportage bearing Utah license T165WN parked in the driveway on three separate occasions since April 2025. This KIA was rented by **M. SHELTON**'s estranged wife, Monique Shelton, in mid-April 2025 and he has been observed as the sole driver on several occasions.

28.     On May 22, 2025, while supporting a controlled buy operation TFO Hotz observed **M. SHELTON** exit this residence and leave in the rented KIA.

29.     TFO Bowers has observed **J. LEE** coming and going from this address on a number of occasions. Administrative Subpoena requests to public utilities showed that **J. LEE** was responsible for the power bills at this location. TFO Bowers also knew through a criminal interview, information obtained through investigative means and observations that **J. LEE** and **M. SHELTON** maintained a romantic relationship and have lived together for at least the past 3 years. TFO Bowers was also aware of at least two Domestic Violence reports/arrest that involved both and indicated a romantic relationship.

**C.     Identification of A. SHELTON's residence at 27025 48th Place S,  #L-302, Kent, WA (Target Location 2 or TL2).**

30.     In October 2023, TFO Bowers became aware of **A. SHELTON**'s residence at 27025 48th Place S, #L-302, Kent, WA. Since that time over many days of surveillance, **A. SHELTON** has been observed using a key to access the front door to this apartment on several occasions. During two separate controlled buy operations that took place on August 24, 2024, and May 8, 2025, A. SHELTON was under constant surveillance from the time he left his residence until he reached the buy locations.

31.     **A. SHELTON** lists this address as his residence on his Washington State Driver's license and his Chevrolet Cruz registration.

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 12

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**D.    Identification of T. CHERRY's residence at 802 45th St NE, #13-103, Auburn, WA (Target Location 3 or TL3)**

32.    In October 2024, **M. SHELTON** was followed to Mallard Pointe Apartments located at 802 45th Street NE, where he met with a black female later positively identified as Tioana J. CHERRY, near Building #13. **T. CHERRY** was positively identified after viewing her Washington State Driver's license photo. On at least two separate dates in October 2024, M SHELTON was observed meeting with T. CHERRY and traveling in the area. At the time their relationship seemed to be only of a romantic nature.

33.    **T. CHERRY** maintains a Washington State business license for a "Spa," named Savvay Salong & Boutique LLC using 802 45th Street NE, #13-103, Auburn as her place of business since October 28, 2024.

34.    Later on in the investigation, after viewing iCloud and Facebook data from **M. SHELTON's** accounts that he and **T. CHERRY** may be engaged in working together to facilitate prostitution. In some of the correspondences between the two of them **T. CHERRY** appeared to be involved with illegal escort businesses and was in contact with other females also associated with **M. SHELTON**, who also appeared to be engaged in the same activities.

35.    On April 28, 2025, TFO Bowers observed **M. SHELTON** use a key to gain access to #13-103.

**E.    Identification of Valley Self Storage 21218 84 Ave S., Storage Unit #171, Kent, WA (Target Location 4 or TL4)**

36.    In mid-April 2025, TFO bowers and Analyst Adams noted GPS tracker data for **A. SHELTON's** Chevrolet Cruz WA#CCB2249, showed **A. SHELTON** had stopped at Valley Self Storage located at 21218 84 Ave S. in Kent Washington on April 22, 2025. TFO Bowers responded to that location to see A. SHELTON using a keypad to gain access to leave the secured storage business.

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 13

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

37.     Analyst Adams was able to learn through an administrative subpoena that **A. SHELTON** was the registered leaseholder for **TL4** since October 2024.

38.     TFO Bowers suspected that **A. SHELTON** may be using that storage unit as a "Stash" location. TFO Bowers knew through training and experience that drug traffickers will keep drugs and money away from their personal homes to keep those items hidden from law enforcement.

39.     On May 8, 2025, TFO Bowers and TFO Gunsolley/K9 Pip met with the facility manager Mike Murphy. He voluntarily granted K9 Pip permission to conduct a narcotics sweep of the exterior of **TL4**.

40.     TFO Gunsolley and K9 Pip have worked together since July 24, 2022. They completed a 240-hour house Department of Corrections Narcotic Detention Canine Academy. On August 28, 2022, subsequent to a demonstration, Pip and TFO Gunsolley were certified as being 100% proficient in the detection of Cocaine, Heroin, and Methamphetamine by the Washington State Criminal Justice Training Commission, certifying official John Munson. The certification processes included numerous searches for the narcotics; recognition of physical and mental reaction of the canine; and interpretation of reactions displayed by the canine. Pip has alerted on over 34 occasions in which controlled substances were found by TFO Gunsolley and other agents conducting the search. 17 search warrants have been obtained based on Pip's alerts.

41.     Pip alerts after detecting the odor of controlled substances for which he has been trained.  His alert consists of physical and mental reactions, which include a heightened emotional state.  His final indication will result in his sitting or laying down.

42.     TFO Gunsolley and K9 Pip approached unit #170, 171 and 172. K9 Pip checked the exterior of each unit, thoroughly checking the seams at the sides and bottom of each garage style roll up door. TFO Gunsolley stated that K9 Pip showed no interest or reacted to units 170 or 172. However, K9 Pips behavior changed while checking the lower seam of the door of unit #171. K9 Pip stopped and immediately sat down and

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 14

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

looked to TFO Gunsolley. TFO Gunsolley stated that K9 Pip showed a positive reaction to the presence of narcotics inside unit #171 and no interest in units #170 or 172, which are on either side of 171. It should be noted that there is at least a 10-12 driveway that separates the buildings. Based on these finding, TFO Bowers believed that his suspicion that **A. SHELTON** was concealing fentanyl inside unit #171 was correct.

### F.  Controlled Buys

43.    During this investigation, five (5) controlled buys were conducted. Four were conducted by TFO Bowers and members of the Tacoma DEA Resident Office (TNET) and Auburn Police Department Special Investigation Unit (SIU). One of the buys was conducted solely by members of the Auburn Police Department SIU. The following is an overview of those controlled buys. During each buy in which the CS was utilized, the CS voluntarily agreed to participate. The CS and the CS's vehicle were searched before and after each controlled buy with no drugs, money or weapons being located. Buy money was withdrawn from the respective unit narcotics funds and the serial numbers were recorded. All of the recovered drugs were retained by the DEA, field tested positive, and transferred the DEA Western Regional Laboratory, for secured storage and laboratory analysis. Laboratory returns on the first three controlled buy stated the contents of each exhibit was positive for fentanyl.

44.    The goal of each buy was to establish probable cause, identify locations where drugs and money were stored, identify co-conspirators and their locations and to identify any vehicles used by this group.

<u>July 24, 2024, Controlled Buy</u>

45.    On July 24, 2024, members of the DEA Tacoma Resident Office and Auburn Police Department Special Investigations Unit (SIU) conducted a controlled buy operation that targeted **M. SHELTON**.

46.    Pre-operational surveillance was established on **M. SHELTON**'s residence located at 12203 SE 292 Street, Auburn, WA. A short time later a rental vehicle left the garage, driven by **J. LEE** and **M. SHELTON** as the passenger.

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 15

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

47.     Shortly after, under Det. Lindgren's supervision and control, the CS placed a phone call to **M. SHELTON** at TT1. **M. SHELTON** did not initially answer, but minutes later, returned the CS's call using TT1. **M. SHELTON** then directed the CS to switch the phone call to a Facetime call. During the Facetime call, the CS made an agreement with M. SHELTON to purchase three ounces of powdered fentanyl. **M. SHELTON** gave the CS a meeting location inside the Kent city limits.

48.     Surveillance units, still watching **J. LEE** and **M. SHELTON** in the rental vehicle, followed them directly back to 12203 SE 292 Street, Auburn minutes after the phone call. Upon arriving, **M. SHELTON** was observed walking into the house and returning two minutes later. The two then drove to the buy location specified by **M. SHELTON**.

49.     Upon arriving there, the CS walked over and entered the back seat area of the rental vehicle. The CS exchanged the pre-recorded buy money for three ounces of powdered fentanyl and left.

50.     Later, the CS positively identified the occupants as the driver **J. LEE** and the passenger **M. SHELTON**. The CS indicated that **M. SHELTON** gave the CS the fentanyl and took possession of the buy money. The entire transaction occurred in **J. LEE's** presence and the CS stated that it was clear that **J. LEE** was aware of what was going on and added that their 3 or 4 year old child was seated next to the CS in a car seat.

51.     The CS gave TFO Bowers the powdered fentanyl, which was retained as evidence. TFO Bowers field tested one some of the suspected fentanyl, which tested positive for fentanyl. The combined weight to include DEA packaging was 135.7 grams.

<u>August 24, 2024, Controlled Buy</u>

52.     Members of the DEA Tacoma Resident Office and Auburn Police Department Special Investigation Unit (SIU) conducted a controlled buy operation that targeted **M. SHELTON**.

53.     Pre-operational surveillance was established on **M. SHELTON**'s residence at 12203 SE 292 Street, Auburn. A short time later, **M. SHELTON** was observed leaving that residence driving a different rental vehicle. Surveillance units followed **M.**

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 16

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**SHELTON** to an apartment complex a few miles away. In that parking lot, **M. SHELTON** met another vehicle and the driver of that vehicle contacted **M. SHELTON** getting into **M. SHELTON's** car. Agents estimated that meeting only lasted less than five minutes. Both vehicles drove off in different directions. This behavior is consistent with street level drug sales.

54.     Under Det. Lindgrens' supervision and control, the CS called **M. SHELTON** on TT1 and agreed to purchase 4 ounces of fentanyl powder. After the call was completed, Det. Lindgren stated that **M. SHELTON** directed the CS to meet him at a located in downtown Kent.

55.     Upon arrival in that area, agents immediately identified **A. SHELTON** driving a rental car in the same area. **A. SHELTON** met the CS and indicated that he did not have that much fentanyl with him, but he would get more and return. **A. SHELTON** directed the CS to meet him at another location a few miles away in Kent.

56.     Agents followed **A. SHELTON** directly to his residence **TL2**. **A. SHELTON** was observed leaving the rental vehicle and walking into **TL2**. Minutes later, **A. SHELTON** emerged from his apartment and got back into his rental vehicle and drove directly to the location he had provided to the CS earlier.

57.     Once there the CS walked to **A. SHELTON's** vehicle and exchanged the recorded buy money for a four (4) ounces of fentanyl powder. **A. SHELTON** immediately left the parking lot.

58.     The CS provided TFO Bowers with several ounces of powdered fentanyl. TFO Bowers field tested one of the bindles, which tested positive for fentanyl. The combined weight to include DEA packaging was 131.2 grams.

### December 7, 2024, Controlled Buy

59.     On December 7, 2024, members of the DEA Tacoma Resident Office and Auburn Police Department Special Investigation Unit (SIU) conducted a controlled buy operation that targeted **M. SHELTON**.

60.     Under Det. Lindgrens' supervision and control, the CS placed a phone call to **M. SHELTON** at TT1 to purchased two ounces of powdered fentanyl powder. The CS

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 17

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

and **M. SHELTON** agreed to the transaction. After the call was completed, Det. Lindgren stated that **M. SHELTON** directed the CS to a meeting location in Auburn**.**

61.    Using ping data for TT1, agents were able to locate **M. SHELTON,** and a female previously positively identified as **Tioana CHERRY** (Hereafter referred to a **T. CHERRY**) at a restaurant near the meeting location give to the CS. **T. CHERRY** is a black female with a date of birth November 19, 2001.

62.    At one point both subjects got into a rented Jeep and drove to the area of 104th Ave SE, just south of SE 236th Street in Kent. **T. CHERRY** left the vehicle and walked to one of the stores while the Jeep drove through the parking lot and exited onto a street. The Jeep was followed directly to a condominium complex located a block away at 23627 102 Place SE in Kent. The Jeep parked outside that location, but no one was located nearby. Minutes later TFO Bowers watched the garage door open and **M. SHELTON** exited through that door and got back inside the Jeep.

63.    The Jeep returned to the parking lot where **T. CHERRY** was picked up. The Jeep was then observed driving to the meeting location **M. SHELTON** gave the CS. Once there the CS, under constant surveillance, entered the rear passenger door of the Jeep. After a few minutes the CS remerged from the Jeep and proceeded to a location specified by Det. Lindgren.

64.    The CS provided TFO Bowers with approximately 109 grams (gross weight) of suspected fentanyl powder. TFO Bowers later field tested the fentanyl which tested positive for fentanyl. The fentanyl was retained as evidence. The combined weight to include DEA packaging was 109.3 grams.

<u>April 25, 2025, Controlled Buy</u>

65.    On April 25, 2025, the Auburn Police Department Special Investigations Unit (SIU) conducted a controlled narcotics purchase targeting **M. SHELTON** using a CS. The goal of this operation was to determine if **M. SHELTON** was using TT1 to traffic fentanyl to obtain future Ping/Pen court orders. Detective Lindgren utilized the CS to call this number and order a quantity of fentanyl powder from **M. SHELTON**.

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 18

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

66.     Det. Lindgren had the CS to contact **M. SHELTON** to purchase a quantity of powdered fentanyl. The CS was provided with official funds from the Auburn Police Department to conduct the controlled buy. The CS was searched before and after the controlled buy with no money, weapons or drugs being found on the CS's person or vehicle.

67.     Under constant supervision by Det. Lindgren and other members of SIU the CS was directed to call **M. SHELTON** at TT1. **M. SHELTON** did not answer the phone, but later called the CS back using TT3, another phone identified as belonging to **M. SHELTON**. Through a search warrant for TT1 location information, agents determined that TT1 generally pinged near **M. SHELTON's** residence, identified as 12009 SE 292nd Way, Auburn (**Target Location 1**). Agents suspected that **M. SHELTON** was using this phone's call forwarding option to conceal his whereabouts and who is able to contact him.

68.     The CS answered and spoke to a male that was immediately identified as **M. SHELTON** by the CS and Det. Lindgren. The CS requested a quantity of powdered fentanyl and **M. SHELTON** agreed. **M. SHELTON** directed the CS to a meeting location in Kent.

69.     A short time later Detectives observed a dark blue 2024 Kia bearing Utah license plates T165WN. This vehicle was rented by Monique Shelton on or about April 4, 2025, and the same vehicle that TFO Bowers had observed **M. SHELTON** driving on April 22, 2025, and April 28, 2025. This vehicle was also observed parked in the driveway of **M. SHELTON's** residence at 6:30 a.m. on May 5, 2025.

70.     The CS walked over and got into the Kia, leaving minutes later. Afterwards, the CS met with Dets. Lindgren and Lewis, and provided a quantity of powdered fentanyl. The CS indicated that the male driving the vehicle and person who sold the CS fentanyl was "MoneyReece." **M. SHELTON**. The CS added that **M. SHELTON**  had two unknown black males in the vehicle with him. The CS was unable to provide any further details. Det. Lindgren field tested the fentanyl, which tested

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 19

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

positive for fentanyl. The fentanyl was temporarily retained as evidence and placed into Auburn PD's evidence storage.

71.     On May 8, 2025, Det Lindgren transferred custody of that fentanyl to TFO's Bowers, who transported that item to the DEA Tacoma Resident Office, where it was processed in accordance with DEA drug handling procedures. The combined weight to include DEA packaging was 68.7 grams. The fentanyl was sent to the DEA lab for confirmation testing and is currently pending.

<u>May 8, 2025, Controlled Buy</u>

72.     On May 8, 2025, members of the DEA Tacoma Resident Office and Auburn Police Department Special Investigation Unit (SIU) conducted a controlled buy operation that targeted **A. SHELTON**.

73.     On May 5, 2024, an undercover officer (UC), texted **A. SHELTON's** cellular phone 206-549-6958 (TT2). This phone was registered to Phelicia Davidson and **A. SHELTON** was listed as a contact person. Both had previously been engaged in a romantic relationship and had children together. TFO Bowers had knowledge of this phone belonging to **A. SHELTON** as far back as 2023 after obtaining phone toll data that provided user information.

74.     **A SHELTON** quickly called the UC, who asked to purchase fentanyl. **A. SHELTON** provided a location and promptly hung up.

75.     A short time later, the UC texted **A. SHELTON** a second time and again received a phone call from **A. SHELTON**. During that call, the UC requested to buy fentanyl powder from **A. SHELTON**. **A. SHELTON** agreed and gave the UC a meeting location in Kent.

76.     The UC and surveillance units responded to the meeting location. During surveillance approximately an hour prior to the planned buy, officers observed **A. SHELTON** exit **Target Location 2** with an unidentified black male that was suspected to be his son. Surveillance followed **A. SHELTON** in his maroon 2014 Chevrolet Cruz bearing Washington license plates CCB2249 to a school where he dropped off the male. **A. SHELTON** was then followed to a gym located at 20600 108 Ave SE in Kent. Shortly

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 20

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

after surveillance agents indicated **A. SHELTON** arrived at the gym, the UC called **SHELTON** to tell him the UC was at the meeting location.

77.     Surveillance followed **A. SHELTON's** Chevy Cruz to the buy location where it stopped next to the UC's vehicle. **A. SHELTON** walked over to the UC's car and got into the backseat behind the UC. After a brief conversation **A. SHELTON** exchanged four small clear plastic bindles of white/grayish looking powder, believed to be fentanyl. The UC gave **A. SHELTON** a quantity of recorded buy funds in return. Both separated and **A. SHELTON** returned to the gym parking lot.

78.     The UC provided TFO Bowers with four bindles, one of which field tested positive for fentanyl. The combined weight to include DEA packaging was 69.4 grams. The fentanyl was sent to the DEA lab for confirmation testing and is currently pending.

<u>May 22, 2025, Controlled Buy</u>

79.     On May 22, 2025, members of the DEA Tacoma Resident Office and Auburn Police Department Special Investigation Unit (SIU) conducted a controlled buy operation that targeted **M. SHELTON**.

80.     Agents conducted surveillance of M. SHELTON at his residence, Surveillance had been established at **M. SHELTON**'s residence, **TL1**.

81.     Det. Lindgren directed the CS to contact **M. SHELTON** on TT1. The CS, under Det. Lindgren's supervision called TT1, but **M. SHELTON** did not answer. A few minutes later, **M. SHELTON** returned the CS's call using TT3. The CS and **M. SHELTON** then agreed to a two ounce fentanyl powder transaction, and **M. SHELTON** provided the CS with a meeting location.

82.     A short time later surveillance units observed **M. SHELTON** exiting the roll up garage door to **TL1** and get into a rented dark gray Kia Sportage bearing Utah license plates T165WN. Agents followed the Kia, which drove directly to the agreed upon meeting location.

83.     While at the meeting location, agents observed **T. CHERRY** approaching from the south on foot. **T. CHERRY** walked directly up to the CS's vehicle and got into the front passenger seat. The CS exchanged recorded funds for a quantity of powdered

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 21

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

fentanyl. **T. CHERRY** exited the CS's vehicle and walked over to the Kia Sportage **M. SHELTON** was driving and got into the front passenger seat.

84.    Surveillance units followed the Kia to the Mallard Pointe Apartment, **Target Location 3**, which this location is two blocks from where the controlled buy took place. Surveillance units found the Kia parked in front of the #13 building near apartment #103. TFO Bowers stopped to view the front door of TL3 and within seconds **T. CHERRY** was observed exiting this door and returning to the KIA.

85.    After the controlled buy, TFO Morrow and Det. Lindgren met the CS who provided the purchased suspected fentanyl powder. The fentanyl field tested positive for fentanyl, and was retained as evidence. The combined weight to include DEA packaging was 114.5 grams. The fentanyl was sent to the DEA lab for confirmation testing and is currently pending.

86.    After the controlled buy, agents followed the KIA from the apartment to a downtown Auburn parking lot. Once parked, a Native American male walked up to the KIA and got into the back seat. He remerged minutes later clutching a baseball sized item in his left hand has he walked to a vehicle parked across the parking lot. Agents lost the KIA for about 20 minutes but located it using ping data from TT3. The KIA was found parked at **TL3**. Approximately 20 minutes later **M. SHELTON** was seen leaving **TL3** and getting into the KIA.

87.    It should be noted that **TL3** has been the same location, where **M. SHELTON**, **A. SHELTON** and **T. CHERRY** were observed in the preceding weeks. The apartment is registered to T. CHERRY and the utilities are listed in her name, along with a business license in her name that uses this address. **M. SHELTON** has been observed frequenting this location and has been observed using a key to open the front door on April 28, 2025. Additionally, ping data for **TT1** and **TT3** have also showed frequenting this general area since mid-April 2025. **TT1** and **TT3** have shown to travel with **M. SHELTON** regularly. Agents have suspected that **M. SHELTON** is using this location as a "Stash House" for his drug trafficking activities.

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 22

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## KNOWLEDGE BASED ON TRAINING AND EXPERIENCE

88.     Based upon my training, experience, and participation in this and other investigations involving drug trafficking, my conversations with other experienced investigators and law enforcement investigators with whom I work, and interviews of individuals who have been involved in the trafficking of methamphetamine, heroin, cocaine and other drugs, I have learned and know the following:

89.     Drug traffickers often use "stash houses" to conceal their illegal activities and contraband. Such stash houses allow drug traffickers to keep their contraband at a hidden location, where they may not live, thereby making it more difficult for law enforcement and/or competitors to identify these locations where drugs and drug proceeds may be hidden.

90.     It is common for drug traffickers to conceal evidence of drug trafficking, including drugs, proceeds of illegal drug sales, and records of illegal drug transactions, in secure locations within their residences, as well as in stash houses, storage units, or garages or other outbuildings on their residences, and/or in vehicles on the property, for their ready access and to conceal them from law enforcement authorities.

91.     It is common to find papers, letters, billings, documents, and other writings, which show ownership, dominion, and control of businesses, residences, and/or vehicles in the residences, stash houses, storage units, garages, outbuildings and/or vehicles of drug traffickers. Items of personal property that tend to identify the persons in residence, occupancy, control, or ownership of the premises also include canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, keys, financial papers, rental receipts and property ownership papers, personal and business telephone and address books and telephone toll records, and other personal papers or identification cards in the names of subjects involved in the criminal activity being investigated.

92.     Drug traffickers frequently amass large amounts of proceeds, in the form of cash, from the illegal sale of drugs that they attempt to legitimize or "launder." To accomplish this goal, drug traffickers use financial institutions and their attendant

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 23

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

services, securities, cashier's checks, safe deposit boxes, money drafts, real estate, shell operations, and business fronts. Persons involved in drug trafficking and/or money laundering keep papers relating to these activities for future reference, including federal and state tax records, loan records, mortgages, deeds, titles, certificates of ownership, records regarding investments and securities, safe deposit box rental records and keys, and photographs. I know from my training and experience that often items of value are concealed by persons involved in large-scale drug trafficking inside of safes, lock boxes, and other secure locations within their residences, outbuildings, and vehicles.

93.    Drug traffickers often place assets in names other than their own to avoid detection by investigative/police agencies, and even though these assets are in the names of other individuals or businesses, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them.

94.    Drug traffickers often document aspects of their criminal conduct through photographs or videos of themselves, their associates, their property, and their products, including drugs and drug proceeds. Drug traffickers usually maintain these photographs or videos in their possession.

95.    Drug traffickers often maintain large amounts of U.S. currency to maintain and finance their ongoing illegal drug trafficking business. Often, drug traffickers from other countries operating in the United States use wire remitters and bulk cash transfers to transfer currency to co-conspirators living in other states or countries.

96.    Drug traffickers commonly have in their possession, on their person, and at their residences and/or in their storage units, firearms and other weapons, which are used to protect and secure their property.

97.    Drug traffickers use mobile electronic devices including cellular telephones and other wireless communication devices to conduct their illegal activities. They often carry these mobiles devices on their persons. Traffickers of controlled substances often use these devices to maintain records of addresses, vehicles, or telephone numbers that reflect names, addresses, vehicles, and/or telephone numbers of their suppliers, customers and associates in the trafficking organization. Drug traffickers frequently change their

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 24

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

cellular telephone numbers to avoid detection by law enforcement, and it is common for drug traffickers to use more than one cellular telephone at any one time.

98.     Drug traffickers use cellular telephones to maintain contact with their suppliers, distributors, and customers. They prefer cellular telephones because, first, they can be purchased without the location and personal information that landlines require. Second, they can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs. Third, they can be passed between members of a drug conspiracy to allow substitution when one member leaves the area temporarily. Since the use of cellular telephones became widespread, every drug trafficker with which I have interacted has used one or more cellular telephones for his or her drug business. I also know that it is common for drug traffickers to retain in their possession cellular phones that they previously used but have deactivated or discontinued using. Based on my training and experience, the data maintained in a cellular telephone used by a drug trafficker is often evidence of a crime or crimes as described more fully later in this affidavit. It is common for drug traffickers to possess drugs, drug paraphernalia, and other items which are associated with the sale and use of controlled substances such as scales, containers, cutting agents, and packaging materials in their residences, stash houses, storage units, garages, outbuildings and/or vehicles on their property.

99.     Drug traffickers frequently try to conceal their identities by using fraudulent names and identification cards. Once identities have been created or stolen from other citizens, drug traffickers use those identifications to falsify records such as Department of Licensing records and phone records for the purpose of theft of services and to evade detection by law enforcement.

100.     It is a common practice for drug traffickers to maintain records relating to their drug trafficking activities in their residences, stash houses, storage units, garages, outbuildings and/or vehicles. Because drug traffickers in many instances will "front" (that is, sell on consignment) controlled substances to their associates, or alternatively, will be "fronted" these items from their suppliers, such record keeping is necessary to keep track

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 25

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

of amounts paid and owed, and such records will also be maintained close at hand so as to readily ascertain current balances. These records include "pay and owe" records to show balances due for drugs sold in the past (pay) and for payments expected (owe) as to the trafficker's suppliers and distributors, telephone and address listings of clients and suppliers, and records of drug proceeds. These records are commonly kept for an extended period.

101.    Drug traffickers often maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation and distribution of controlled substances. These documents whether in physical or electronic form, are maintained where the traffickers have ready access to them. These documents include travel records, receipts, airline tickets, auto rental agreements, invoices, and other memorandum disclosing acquisition of assets and personal or business expenses. I also know that such records are frequently maintained in drugs traffickers' residences, stash houses, storage units, garages, outbuildings and/or vehicles.

102.    Tablet presses may be easily purchased online. Interchangeable pill press die stamps may be used in the machines to create different sizes, shapes, and types of pills/tablets. The pill press die stamps are frequently designed to make the pills being pressed appear as legitimate prescribed medicines. In the case of fentanyl pills, they are frequently pressed into "m30" pill designs to mimic Oxycontin. Using these devices, drug dealers can produce large quantities of counterfeit pills in their own homes for wide distribution with relatively small start-up cost.

## KNOWLEDGE RELATED TO NARCOTICS DISTRIBUTERS AND PHONES

103.    Based on my training and experience, and through conversations with fellow law enforcement officers trained on the more technical aspects of computer analysis, I know that drug manufacturers and dealers use mobile telephones as a tool or instrumentality in committing their criminal activity, to include laundering their proceeds. They use them to maintain contact with their suppliers, distributors, and customers. They prefer mobile telephones for multiple reasons, including: First, they can be purchased

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 26

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

without the location and personal information that land lines require. Second, they can be

easily carried to permit the user maximum flexibility in meeting associates, avoiding

police surveillance, and traveling to obtain or distribute drugs. Third, they can be passed

between members of a drug conspiracy to allow substitution when one member leaves the

area temporarily. Since cellular phone use became widespread, every drug dealer I have

contacted has used one or more cellular telephones for his or her drug business. I also

know that it is common for drug traffickers to retain in their possession phones that they

previously used, but have discontinued actively using, for their drug trafficking business.

These items may be kept for months in a safe place controlled by the drug trafficker.

104.    Based on my training and experience, the data maintained in a cellular

telephone used by a drug dealer often contains evidence of criminal behavior including:

a.    The assigned number to the cellular telephone known as the mobile

directory number (MDN), and the identifying telephone serial numbers (Electronic Serial

Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile

Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are

important evidence because they reveal the service provider, allow us to obtain subscriber

information, and uniquely identify the telephone. This information can be used to obtain

toll records, to identify contacts by this telephone with other cellular telephones used by

co-conspirators, to identify other telephones used by the same subscriber or purchased as

part of a package, and to confirm if the telephone was contacted by a cooperating source.

b.    The stored list of recent received, missed, and sent calls is important

evidence. It identifies telephones recently in contact with the telephone user. This is

valuable information in a drug investigation because it will identify telephones used by

other members of the organization, such as suppliers, distributors, and customers, and it

confirms the date and time of contacts. If the user is under surveillance, it identifies what

number he called during or around the time of a drug transaction or surveilled meeting.

Even if a contact involves a telephone user not part of the conspiracy, the information is

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 27

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user. Identifying a defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates.

c.    Stored text messages are important evidence. Agents can identify both drug associates, and friends of the user who likely have helpful information about the user, his location, and his activities.

d.    Drug traffickers increasingly use applications on smart phones that encrypt communications such as WhatsApp, or applications that automatically delete messages, such as Snapchat, to avoid law enforcement monitoring or recording of communications regarding drug trafficking and/or money laundering. Evidence of the use of such applications can be obtained from smart phones and is evidence of a smart phone user's efforts to avoid law enforcement detection.

e.    Photographs and video on a mobile telephone are of evidentiary value as they help identify the user, either through his or her own picture, or through pictures of friends, family, and associates that can identify the user. Pictures and video also identify associates likely to be members of the drug trafficking organization. Some drug dealers photograph groups of associates, sometimes posing with weapons and showing identifiable gang signs. Also, digital photos often have embedded "geocode" or GPS information embedded in them. Geocode information is typically the longitude and latitude where the photo was taken. Showing where the photo was taken can have evidentiary value. This location information is helpful because, for example, it can show where coconspirators meet, where they travel, and where assets might be located.

f.    Stored address records are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects.

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 28

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

g.      Stored web browsing history is important evidence because it shows the user's activities and places of interest, including if the user looked up addresses, restaurants, and other businesses on a web browser on the cell phone, which can show where coconspirators meet, where they travel, and where assets might be located. Moreover, through web browsing history, a user can also access or look up associates or coconspirators on social media, which is valuable information in a drug investigation because it will identify members of the organization, such as suppliers, distributors and customers.

h.      Stored data in money transfer applications, such as Venmo and CashApp, are important evidence because they show from whom and to whom the user is sending money. In the era of digital currency and online money transfers, I know based on my training and experience, that drug traffickers use Cash App and other money transfer applications to pay for drug products in lieu of physical cash. Accordingly, any stored data on money transfer applications on cell phones can show the user's drug trafficking associates, customers, and other connections.

i.      Stored location data, including from any map applications on the cell phone, are important evidence because the data can show where the user has been, including addresses of residences and business parking lots, which can show stash house locations, drug transaction meeting locations, or the addresses of a drug trafficker's associates, customers, or suppliers.

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 29

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**CONCLUSION**

105.    For the foregoing reasons, I respectfully submit there is probable cause to search the Target Locations, more particularly described in Attachments A-1, A-2, A-3, A-4 A-5, A-6, for the evidence described in Attachment B.

The affidavit and application are being presented by reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3).

_____
Kenneth D. Bowers, Affiant
Task Force Officer
Drug Enforcement Administration

The above-named agent provided a sworn statement to the truth of the foregoing affidavit by telephone on the 6th day of June, 2025.

_____
S. KATE VAUGHAN
United States Magistrate Judge

AFFIDAVIT OF TFO KENNETH D. BOWERS
USAO# 2024R00931 - 30

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT A-1**

**Premises to Be Searched**

The premises to be searched (**Target Location 1 (TL1)**) is **at 12009 SE 292nd Way, Auburn WA 98092**, a two-story, single-family home, tan and brown in color with a white trim. The residence is located on the south side of 292nd Way SE and has the numbers 12009 affixed to a roof column to the right of the front door.



UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1
2
3
4
5
6
7

**ATTACHMENT A-2**

**Premises to Be Searched**

The premises to be searched (**Target Location 2 (TL2)**) is **at 27025 48th Place South #L-302, Kent WA 98032**, is an apartment located on the third floor of the "L" building at the listed address. The front door is green, faces north and has the unit number "L302" affixed to the front door. The search should include any outdoor storage units accessed only from "L302".

8
9
10
11
12
13
14
15
16
17
18
19
20



21
22
23
24
25
26
27

ATTACHMENT A-2 Page 1
USAO# 2024R00931

UNITED STATES ATTORNEY
1201 Pacific Avenue, suite 700
Tacoma, Washington 98402
(253) 428-3800

**ATTACHMENT A-3**

**Premises to Be Searched**

The premises to be searched **(Target Location 3 (TL3))** is at **802 45th Street NE, #13-103, Auburn WA. 98002**, is an apartment located on the ground floor of the "13" building at the listed address. The front door is dark blue, faces north and has the unit number "103" affixed to the front door.  The search should include any outdoor storage units accessed only from "103".



UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**ATTACHMENT A-4**

**Premises to Be Searched**

The premises to be searched (**Target Location 4 (TV4)**) is **21218 84th Avenue South #171, Kent WA 98032**, is a business called Valley Self Storage. Storage unit #171 is located in the third row of buildings from the north and faces south. The numbers "171" are affixed un the upper right edge of the garage door.



UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**ATTACHMENT A-5**

**Premises to Be Searched**

The vehicle to be searched (**Target Vehicle 1 (TV1)**) is **):** The vehicle bearing Washington license plates, CCB2249, maroon Chevrolet Cruz V.I.N. #1G1PC5SB0E7253537, registered to Angelo Dewayne Shelton at 27025 48th Place South #L-302, Kent WA 98032



UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## ATTACHMENT A-6

### Premises to Be Searched

The vehicle to be searched **(Target Vehicle 2 (TV2))** is ): The vehicle bearing

Utah license plates, T165WN, dark blue Kia Sportage, V.I.N.#KNDPU3DF4R730279

registered to PV Holding Corp, 565 N. 3800 W, Salt Lake City, UT. 84116



UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

The following items, including records, documents, files or materials, in whatever form, including handmade or mechanical form (such as printed, written, handwritten, or typed); photocopies or other photographic form; and electrical, electronic, and magnetic form (such as tapes, cassettes, hard disks, floppy disks, diskettes, compact discs, CD-ROMs, DVDs, optical disc, Zip cartridges, printer buffers, smart cards, or electronic notebooks, or any other electronic storage medium) that constitute evidence, instrumentalities, or fruits of violations of distribution and possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1), use of a communications facility in furtherance of a felony drug offense in violation of 21 U.S.C. § 843(b), conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846, (the Target Offenses) involving **Maurice T. SHELTON, Angelo D. SHELTON, Tioana CHERRY and Jannie LEE** or any co-conspirator, that is:

Any suspected controlled substances.

Drug paraphernalia and instruments of drug trafficking: Items used, or to be used, to store, process, package, use, and/or distribute controlled substances, such as plastic bags, cutting agents, scales, measuring equipment, tape, hockey or duffel bags, chemicals or items used to test the purity and/or quality of controlled substances, and similar items.

Drug transaction records: Documents such as ledgers, receipts, notes, and similar items relating to the acquisition, transportation, and distribution of controlled substances, or containing types, amounts, or prices of drugs trafficked as well as dates, places, or amounts of specific transactions, and any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information).

Customer and supplier information: Items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries,

ATTACHMENT B - 1
USAO# 2024R00931

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

calendars, notes with phone numbers and names, "pay/owe sheets" with drug amounts and prices, maps or directions, and similar items.

Cash and financial records: Currency and financial records, including bank records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, vehicle documents, and similar items; and other records that show income and expenditures, net worth, money transfers, wire transmittals, negotiable instruments, bank drafts, cashier's checks, and similar items, and money counters.

Photographs/surveillance footage: Photographs, video tapes, digital cameras, surveillance cameras and associated hardware/storage devices, and similar items, depicting property occupants, friends and relatives of the property occupants, or suspected buyers or sellers of controlled substances, controlled substances or other contraband, weapons, and assets derived from the distribution of controlled substances.

Weapons, including firearms, magazines, ammunition, and body armor.

Codes: Evidence of codes used in the distribution of controlled substances, including passwords, code books, cypher or decryption keys, and similar information.

Indicia of ownership or possession of the Target Location such as deeds, contracts, escrow documents, mortgage documents, rental documents, utility and phone bills, registered mail addressed **Maurice T. SHELTON, Angelo D. SHELTON, Tioana CHERRY and Jannie LEE**, registration documents, or other documents evidencing occupancy or possession of the Target Location or any associated vehicle.

Evidence of unexplained wealth: ownership documents or other evidence of ownership of property such as vehicles, vessels, boats, airplanes, jet skis, all-terrain vehicles, RVs, and personal property; evidence of international or domestic travel, hotel/motel stays, and any other evidence of unexplained wealth,

Safes and locked storage containers, and the contents thereof which are otherwise described in this document.

Any and all drugs—controlled or otherwise—used to medicate or treat any animals used for the purposes of animal fighting.

ATTACHMENT B - 2
USAO# 2024R00931

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Cell Phones: Cellular telephones and other digital devices[2] may be seized, and searched for any of the records or information described above and for the following items:

      a.    Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

      b.    Stored list of recent received, sent, and missed calls;

      c.    Stored contact information;

      d.    Stored photographs of narcotics, currency, firearms or other weapons, evidence of suspected criminal activity, and/or the user of the phone or suspected co-conspirators, including any embedded GPS data associated with those photographs;

      e.    Stored communications related to drug activity including text messages, Facebook messages and other app based communication platforms.

      f.    Stored photographs and videos of narcotics, currency, financial records (such as deposit slips and other bank records), other vehicles, firearms or other weapons, evidence of target offenses, or that may show the user of the phone or coconspirators, including any embedded GPS data associated with those photographs;

      g.    Evidence of user attribution showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

For any digital device or other electronic storage media upon which electronically stored information that is called for by this warrant may be contained, that may contain things otherwise called for by this warrant, or whose seizure is otherwise authorized by this warrant:

---

[2] "Digital device" includes any device capable of processing and/or storing data in electronic form, including, but not limited to: wireless communication devices such as mobile or cellular telephones and telephone paging devices, personal data assistants ("PDAs"), iPods/iPads, Blackberries, digital cameras, digital gaming devices, global positioning satellite devices (GPS), or portable media players.

ATTACHMENT B - 3
USAO# 2024R00931

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  Evidence of who used, owned, or controlled the digital device or other electronic
2  storage media at the time the things described in this warrant were created, edited, or
3  deleted, such as logs, registry entries, configuration files, saved usernames and
4  passwords, documents, browsing history, user profiles, email, email contacts, "chat,"
5  instant messaging logs, photographs, and correspondence;

6  Evidence of software that would allow others to control the digital device or other
   electronic storage media, such as viruses, Trojan horses, and other forms of malicious
7  software, as well as evidence of the presence or absence of security software designed to
8  detect malicious software;

9  Evidence of the lack of such malicious software;

10  Evidence of the attachment to the digital device of other storage devices or similar
11  containers for electronic evidence;

12  Evidence of counter-forensic programs (and associated data) that are designed to
13  eliminate data from the digital device or other electronic storage media;

14  Evidence of the times the digital device or other electronic storage media was
15  used;

16  Physical keys, encryption devices, dongles and similar physical items that are
17  necessary to gain access to the computer equipment, storage devices or data; and

18  Passwords, password files, test keys, encryption codes or other information
19  necessary to access the computer equipment, storage devices or data.

20  Documentation and manuals that may be necessary to access the digital device or
21  other electronic storage media or to conduct a forensic examination of the digital device
   or other electronic storage media;

22  Applications, utility programs, compilers, interpreters, and other software used to
23  facilitate direct or indirect communication with the computer hardware, storage devices,
24  or data to be searched;

25  Contextual information necessary to understand the evidence described in this
26  attachment.

27

ATTACHMENT B - 4
USAO# 2024R00931

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the DEA may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

If, after conducting its examination, law enforcement personnel determine that any digital device contains evidence responsive to the Items to be Seized listed above, or is an instrumentality of the criminal offenses referenced above, the government may retain that device during the pendency of the case as necessary to, among other things, preserve the instrumentality evidence for trial, ensure the chain of custody, and litigate the issue of forfeiture. If law enforcement personnel determine that a device does not contain such evidence and was not an instrumentality of the criminal offenses referenced above, it shall be returned to the person/entity from whom it was seized within 60 days of the issuance of the warrant, unless the government seeks and obtains authorization from the court for its retention.

The seizure of digital devices or other electronic storage media and/or their components as set forth herein is specifically authorized by this search warrant, not only to the extent that such digital devices or other electronic storage media constitute instrumentalities of the criminal activity described above, but also for the purpose of the conducting off-site examinations of their contents for evidence, instrumentalities, or fruits of the aforementioned crimes.

During the execution of the search of the Subject Premises or Vehicles described in Attachments A-1, A-2, A-3, A-4, A-5, and A-6, or the person of **Maurice T. SHELTON, Angelo D. SHELTON, Tioana CHERRY and Jannie LEE** if law

ATTACHMENT B - 5
USAO# 2024R00931

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    enforcement encounters a smartphone or other electronic device equipped with a

2    biometric-unlock feature, and if law enforcement reasonably believes **Maurice T.**

3    **SHELTON, Angelo D. SHELTON, Tioana CHERRY and Jannie LEE** are a user of

4    the device, then – for the purpose of attempting to unlock the device in order to search the

5    contents as authorized by this warrant – law enforcement personnel are authorized to: (1)

6    press or swipe the fingers (including thumbs) of **Maurice T. SHELTON, Angelo D.**

7    **SHELTON, Tioana CHERRY and Jannie LEE** to the fingerprint scanner of the

8    device; and/or (2) hold the device in front of the face and open eyes of **Maurice T.**

9    **SHELTON, Angelo D. SHELTON, Tioana CHERRY and Jannie LEE** and activate

10    the facial, iris, or retina recognition feature.

11            In pressing or swiping an individual's thumb or finger onto a device and in

12    holding a device in front of an individual's face and open eyes, law enforcement may not

13    use excessive force, as defined in *Graham v. Connor*, 490 U.S. 386 (1989); specifically,

14    law enforcement may use no more than objectively reasonable force in light of the facts

15    and circumstances confronting them.

16

17

18

19

20

21

22

23

24

25

26

27

ATTACHMENT B - 6
USAO# 2024R00931

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800